291 S.W.3d 712 (2008)
John W. GILBERT, M.D.; Physician Services, P.S.C., d/b/a Open Stand-Up MRI of Florence, Open MRI of Hazard and Open MRI of London, Appellants,
v.
COMMONWEALTH of Kentucky CABINET FOR HEALTH AND FAMILY SERVICES; Kentucky Diagnostic Center; Pikeville Medical Center; Appalachian Regional Healthcare, Inc.; The Kentucky Hospital Association; and Marymount Medical Center, Appellees.
No. 2007-CA-000042-MR.
Court of Appeals of Kentucky.
February 22, 2008.
Rehearing Denied April 15, 2008.
*714 Joe F. Childers, Richard A. Getty, Lexington, KY, for appellant.
Ann Truitt Hunsaker, Frankfort, KY, for appellee, Commonwealth of Kentucky, Cabinet for Health and Family Services.
Ellen M. Houston, Mathew R. Klein, David V. Kramer, Crestview Hills, KY, for Kentucky Diagnostic Center.
Michael Baker, Lexington, KY, for Appalachian Regional Healthcare, Inc.
Joseph H. Terry, Alexander J. Moeser, Lexington, KY, Amicus Curiae, for Association of American Physicians and Surgeons.
Charles J. Cronan, IV, Jennifer L. Elliott, Louisville, KY, Amicus Curiae, for The Kentucky Medical Kentucky Medical Association.
*715 Before ACREE, KELLER, and MOORE, Judges.
ACREE, Judge.
John W. Gilbert, M.D., his wholly owned corporation, Physician Services, PSC ("Physician Services"), and his satellite offices operating under the assumed names of Open Stand-Up MRI of Florence, Open MRI of Hazard and Open MRI of London(collectively, "Dr. Gilbert"), appeal the Opinion and Order entered by the Franklin Circuit Court affirming the decision of the Cabinet for Health and Family Services ("Cabinet") finding Dr. Gilbert in violation of Kentucky Revised Statute (KRS) 216B.010, et seq., by operating health facilities with magnetic resonance imaging ("MRI") services in London, Hazard and Florence without first obtaining a certificate of need ("CON"). For the following reasons, we affirm.
Kentucky's Legislature long ago made a policy determination that
the proliferation of unnecessary health-care facilities, health services and major medical equipment results in costly duplication and underuse of such facilities, services and equipment, and that such proliferation increases the cost of quality healthcare within the Commonwealth.
KRS 216B.010.[1] The Legislature further deemed it appropriate to regulate healthcare providers by requiring licensure of health facilities, services and equipment. KRS 216B.061.
Dr. Gilbert has never contested the fact that his facilities in Florence, London and Hazard, and the health services provided there are embraced by the chapter's broad definitions of "health facility" and "health services." KRS 216B.015(12), (13). However, he claims these facilities and services are exempt from licensure pursuant to KRS 216B.020(2)(a) which states
Nothing in this chapter shall be construed to authorize the licensure, supervision, regulation, or control in any manner of:
(a) Private offices and clinics of physicians, dentists, and other practitioners of the healing arts[.]
Our review of this case, then, requires our proper construction of this statute, as well as an examination of the Cabinet's factfinding and its application of the statute to those facts. First, we construe the statute.
Statutory construction presents a question of law. Commonwealth v. Garnett, 8 S.W.3d 573, 575-76 (Ky.App.1999). The ultimate goal when construing a statute is to determine and effectuate the legislature's *716 intent. KRS 446.080(1); Autozone, Inc. v. Brewer, 127 S.W.3d 653, 655 (Ky.2004). Neither we nor the Cabinet is at liberty to add to or to subtract from the legislative enactment nor to discover any meaning not reasonably ascertainable from the language used. Beckham v. Board of Education of Jefferson County, 873 S.W.2d 575, 577 (Ky.1994).
Although courts generally give great deference to an agency interpretation of statutes they are charged to administer, that deference will not permit an abdication of the court's responsibility to finally construe the same statutes. In matters of statutory construction, the courts have the ultimate responsibility. Delta Air Lines, Inc. v. Commonwealth, Revenue Cabinet, 689 S.W.2d 14, 20 (Ky. 1985).
But a statute is open to construction, whether by an agency or by the courts, only if the language used is ambiguous and requires interpretation. Autozone, 127 S.W.3d at 655. If the language is clear and unambiguous and if applying the plain meaning of the words would not lead to an absurd result, further interpretation is unwarranted. Id.; Overnite Transportation v. Gaddis, 793 S.W.2d 129, 131 (Ky.App.1990).
The Cabinet concluded that KRS 216B.020(2)(a) is not ambiguous. Relying on dictionary definitions of the individual words included in the statute, i.e., "private," "of," and "practitioner," the Cabinet determined that
an "office or clinic" cannot be a "practitioner's private office" if the physician owner does not actively practice at the "office or clinic."
Dr. Gilbert agrees with the Cabinet that the statute is unambiguous. However, he disagrees with the Cabinet's interpretation. He notes that, on its face, the statute includes no element of personal active participation by the physician who owns the practice. This is true. When we read the statute without regard to its context, Dr. Gilbert's simpler interpretation of KRS 216B.020(2)(a)  an office owned by a physician  is just as reasonable as that of the Cabinet. We believe both interpretations are wrong.
When an undefined term contained in a statute admits of two mutually exclusive yet reasonable constructions, there is an ambiguity. See, e.g., Young v. Hammond, 139 S.W.3d 895, 910 (Ky.2004)(requiring the interpretation of the undefined term "qualified"); see also, BLACK'S LAW DICTIONARY (8th ed.2004), ambiguity; and BLACK'S LAW DICTIONARY 73 (5th ed.1979)(a term is "ambiguous" when "it is reasonably capable of being understood in more than one sense"). When that ambiguity does not appear on the face of the statute, but instead arises when the statutory term is applied, the ambiguity is latent.[2]Whitley Whiz, Inc. v. Whitley County By and Through Whitley County Fiscal Court, 812 S.W.2d 149, 150-51 (Ky. 1991).
Notwithstanding Dr. Gilbert's assertion and the Cabinet's determination to the contrary, and because KRS 216B.020(2)(a) admits of two reasonable constructions, we *717 find that the statutory subsection is latently ambiguous.
Although dictionary definitions can sometimes offer guidance, as they did for the Cabinet, such definitions are not conclusive. Once again, the overriding factor in the interpretation of any ambiguous term in a statute is the legislative intent. Commonwealth v. Plowman, 86 S.W.3d 47, 49 (Ky.2002).
Dr. Gilbert asserts, and we agree, that the Cabinet grafted onto KRS 216B.020(2)(a) an element not contained in the statute, namely, the physician-owner's personal active participation in the private office or clinic. We do not believe the Legislature intended to prohibit or discourage any physician from establishing satellite offices or clinics in medically underserved communities (or any community for that matter), staffed by his physician-employees, for the purpose of actually treating patients in those communities. Requiring the physician-owner's personal active participation in the medical practice at each satellite office, and, conversely, requiring the treating physician to be an owner of the practice, would make the exemption practicably unavailable in such circumstances. A CON would be necessary to permit the treatment of patients at each satellite office simply because the treating physician was an employee and not an owner. KRS 216B.061(1)("Unless otherwise provided in this chapter, no person shall[,] without first obtaining a certificate of need[, e]stablish a health facility[.]"); KRS 216B.015(12)("Health facility" is defined very broadly and specifically includes any entity that "provide[s] medical diagnosis, treatment, nursing, rehabilitative, or preventive care[, including] rural health clinics[.]"); see also KRS 216B.015(13)(defining "Health services" equally broadly as "clinically related services [which term is also undefined] provided within the Commonwealth to two (2) or more persons, including, but not limited to, diagnostic, treatment, or rehabilitative services").
Therefore, we hold that active participation by the physician-owner at each of his offices is not a requirement to the availability of the exemption of KRS 216B.020(2)(a).[3]
This does not mean, however, that the exemption is available in this case. Here, the Cabinet harmlessly erred by focusing too much attention on Dr. Gilbert's personal inactivity at his three satellite offices  Florence, London and Hazard. We believe the availability of the private office exemption in this case, and in any case, depends on the kind of activity that actually takes place at the office for which the exemption is sought.
Dr. Gilbert had the "burden of showing" the Cabinet that the exemption was available and applicable to each of these three offices. 900 Kentucky Administrative Regulations (KAR) 6:050 Section 18(8). He began by urging the classic form over substance argument, i.e., that because he owns the satellite offices and he is a physician, these offices are the private offices of a physician. The Cabinet did not accept this overly simplistic interpretation of KRS 216B.020(2)(a), nor will we. To do so would allow every physician in the Commonwealth to ignore Chapter 216B altogether as long as he owned the building containing the health facility or where the health services are provided.
*718 But Dr. Gilbert also claims that "[a]pproximately 78% of all MRI scans are performed for diagnosis of Appellant's own patients[.]" In his brief, Dr. Gilbert referred this Court to a specific citation in the record for proof of this assertion. At oral argument again we were implored to consider that same citation. When we turned to that reference we found no evidence of this claim of fact. Instead, there was a repetition of this same assertion in an earlier memorandum he had filed in support of his motion to alter, amend or vacate the Franklin Circuit Court's Opinion and Order affirming the Cabinet. That earlier assertion was not supported by citation to the record either, but simply stated that "78% of the services provided by the Practice were physician services to treat the Practice's patients." Argument of counsel, absent underlying supportive proof, is insufficient to carry the day. Jefferson County v. Zaring, 91 S.W.3d 583, 595 (Ky.2002)(establishment of any legal position "requires proof, and not merely argument"); Bixler v. Commonwealth, 204 S.W.3d 616, 633 (Ky.2006)("arguments did not constitute evidence in the case").
We searched the entire record for evidentiary support for this assertion, but were unsuccessful. However, our review confirmed that the Cabinet's findings of fact, none of which Dr. Gilbert challenges, "are supported by substantial evidence and are not clearly erroneous based upon a review of the record as a whole." KRS 216B.120(2). A summary of those factual findings illustrates the activity occurring at each of these facilities.
The evidence presented at the show cause hearing does not describe a private office or clinic of a physician. It does, however, describe a facility which performs diagnostic testing on patients who, but for their referral to these MRI testing facilities by their own treating physicians, would have no connection to Dr. Gilbert's medical practice.
The Cabinet found that at all three offices "[t]here are no physicians present for a substantial portion of the time [and still] the MRI machines [were] running and scanning individuals;" that "[r]egardless of which facility performs the MRI scan, virtually all of the scans are read in Lexington;" and that the "MRI services are billed `globally' [meaning that Dr.] Gilbert is reimbursed for both the technical and professional component of the MRI service." The record shows that MRI technicians, not physicians, conduct each MRI scan performed on each patient.
Regarding the Florence facility, the Cabinet found that one of Dr. Gilbert's physician-employees was regularly present. However, that physician-employee testified that he "does not render treatment to patients[.]" Instead, he greets patients, "asks the techs if everything is going okay ... and get[s] a cup of coffee" and spends a lot of time learning and reading. He also testified that he performed one independent medical examination ("IME") of a patient. However, even Dr. Gilbert agreed that "a physician performing an IME is not a treating physician" but, typically, works at the request of an insurance company. There was scant evidence, if any at all, that this physician was regularly employed in personally treating these patients.
The Cabinet also found that "the vast majority of the scans performed [in Florence] were for outside referrals for other physicians." A Lexington physician employed by Dr. Gilbert to read MRI's conducted in Florence testified that the "vast majority of those scans are ordered by an outside physician." One of the physicians who referred his patients to the Florence facility testified that "he has sent 20 to 30 *719 patients [there] without any follow-up with a Physician Services physician."
The record paints a similar picture of the London facility. The Cabinet found that "MRI scans are performed in London regardless of Dr. Gilbert's or any other physician's presence." Again, as with the Florence facility, outside physicians "refer the vast majority of scans to the London MRI scanner."
In Hazard, Dr. Gilbert's "facility scans a significant number of patients based on orders made by outside physicians." A physician who referred his patients for testing to Dr. Gilbert's Hazard facility testified that he "performs his own history and physical and sends this documentation with the patient." He has "never requested a consultation or follow-up with any Physician Services physician."
The facility at Hazard presents an additional problem. Based on evidence presented, in particular the accounting records of the Hazard office, the Cabinet determined that the MRI practice at Hazard is a joint venture between Dr. Gilbert and Soteria Imaging Services, a non-physician entity that leases and manages medical imaging equipment. Contrary to the written agreement which called for the payment of a set fee to Soteria, each joint venturer is compensated by splitting the profits of MRI testing equally. The Cabinet found, and we agree, that this nonphysician's at-risk ownership of its 50% interest in this office's practice is an independent basis upon which to deny application of the physician's office exemption.
All in all, we believe the Cabinet's miscue with the statute's interpretation did not prevent it from making the proper determination. These offices had every appearance that they were something other than the private offices or clinics of a physician  specifically, they had all the hallmarks of a diagnostic testing facility. The manner of operation of these facilities establishes one obvious fact. The only reason these patients presented themselves at the testing facility was that, unlike a patient whose blood or urine or biopsied tissue is tested, these patients could not separate themselves from the biological subject matter of the test  their bodies.
In summary, whether a facility owned by a physician is a physician's office and therefore exempt from regulation by the Cabinet pursuant to KRS Chapter 216B depends on the nature of the activity conducted there. The answer will vary from case to case. In this case, Dr. Gilbert failed to meet his burden of showing that the majority of activity at these facilities was the provision of medical care to his own patients or those of his physician-employees.
Our opinion makes moot Dr. Gilbert's argument that a new regulation, 900 KAR 6:050 Section 18(9)(a), represents a change in the law that should be applied retroactively to eliminate the "active participation" element. Because we find that, for purposes of KRS Chapter 216B, Dr. Gilbert's facilities in Florence, London and Hazard are not physician's offices, his argument that the Cabinet lacks jurisdiction to regulate activities there is also moot.
For the foregoing reasons, the Franklin Circuit Court's December 5, 2006, Order denying Dr. Gilbert's motion pursuant to Kentucky Rule of Civil Procedure 59.05, and that court's June 14, 2006, Opinion and Order affirming the Cabinet's February 10, 2005, Final Order is AFFIRMED.
ALL CONCUR.
NOTES
[1] Amicus Curiae, Association of American Physicians & Surgeons (AAPS), asserts that there is "odd logic at the heart of [CON] laws, i.e., that by making it harder to open new practices the public will benefit through better medical care and lower health costs." AAPS cites a July 2004 report prepared jointly by the United States Federal Trade Commission and the United States Department of Justice entitled Improving Health Care: A Dose of Competition. These federal agencies conclude

that CON programs are generally not successful in containing health care costs and that they can pose anticompetitive risks.... CON programs risk entrenching oligopolists and eroding consumer welfare.... A similar analysis applies to the use of CON programs to enhance health care quality and access. For these reasons, the Agencies urge states with CON programs to reconsider whether they are best serving their citizens' health care needs by allowing these programs to continue.
Improving Health Care: A Dose of Competition (2004), available at http://www. usdoj.gov/atr/public/health_care/204694/chapter8.htm# 1. However, AAPS appropriately acknowledges that the legislative branch, and not the judicial branch, is the proper forum to present such authority and argument.
[2] This particular ambiguity carries over to every section of the chapter addressing "applicants" since KRS 216B.015(4) says "`Applicant' means any physician's office...." Those sections affected are KRS 216B.025, 216B.040, 216B.062, 216B.086, 216B.095, 216B.105, 216B.120, 216B.125, 216B.131, and 216B.305. Since "physician's office" is not even included in the chapter's definition of "Person," KRS 216B.015(21), we are left with no specific guidance from the Legislature as to what it intended when it used the term "physician's office."
[3] Coincidentally, this is one outcome urged, albeit alternatively, by the Amicus Curiae, Kentucky Medical Association.