COMMONWEALTH of Kentucky FI-
NANCE AND ADMINISTRATION
CABINET DEPARTMENT OF REV-
ENUE, Appellant,

v.

LEXINGTON–FAYETTE URBAN
COUNTY GOVERNMENT,
Appellee.

No. 2009–CA–002220–MR.

Court of Appeals of Kentucky.

Oct. 8, 2010.

Discretionary Review Denied by
Supreme Court Oct. 19, 2011.

Bethany Atkins Rice, Office of Legal
Services for Revenue, Frankfort, KY, for
appellant.

David J. Barberie, Leslye M. Bowman,
Lexington–Fayette Urban County Govern-
ment, Lexington, KY, for appellee.

Before ACREE and NICKELL,
Judges; HARRIS,[1] Senior Judge.

*OPINION*

HARRIS, Senior Judge:

In this case of first impression the Com-
monwealth of Kentucky, Finance and Ad-

1. Senior Judge William R. Harris sitting as    Special Judge by assignment of the Chief Jus-

ministration Cabinet, Department of Revenue (Department) appeals from an opinion and order of the Franklin Circuit Court entered on October 29, 2009, which affirmed an order of the Kentucky Board of Tax Appeals rendered on September 23, 2008. In its order the Board reversed a Final Ruling which the Department had issued on August 24, 2007, denying the complaint of Lexington–Fayette Urban County Government (LFUCG) seeking an increase in LFUCG's total historical collections under its former cable television franchise fee and a corresponding increase in the hold harmless distribution to be made to it under the provisions of KRS 136.650 and 136.652. In its order, the Board also directed the Department to redetermine the amount of LFUCG's distribution utilizing its "base revenue" as the Board determined the meaning of that term.

On appeal to this Court, the Department's central argument is that the term "base revenue" in KRS 136.650(3) should be interpreted as set forth in its final ruling. LFUCG's position is that the Board and Franklin Circuit Court have correctly defined the term. After carefully reviewing the record, authorities, and arguments of counsel, we perceive that the interpretation which the Board and Franklin Circuit Court have applied is correct. Accordingly, we affirm.

The facts pertinent to this appeal are undisputed. The only issue to be resolved being one of law, to wit, interpretation of the term "base revenue" in KRS 136.650(3), we review the lower court's order de novo. *Western Kentucky Coca–Cola Bottling Co., Inc. v. Revenue Cabinet*, 80 S.W.3d 787, 790–91 (Ky.App.2001).

Franklin Circuit Court has skillfully and succinctly chronicled the procedural history and pertinent facts, which we here quote from its opinion and order:

In 2005, the General Assembly enacted KRS 136.600 et seq., creating a Telecommunications Tax and removing the authority of the municipalities to levy a franchise fee on cable television providers and to levy certain property taxes on telecommunications companies. The statutes provide for a 3% tax on the retail purchase of multichannel video programming ("MVP") services, a 2.4% tax on all revenues received by providers of such services, and a 1.3% tax on gross revenues received by providers of communications services. A fund was established to hold the receipts of these taxes, which is administered by the Cabinet. The Cabinet is charged with the allocation and distribution of funds collected to various parties, including municipality governments. These amounts are designated as monthly "hold-harmless amounts" because they are intended to replace revenue lost to local governments by the abolition of the prior local franchise fees and taxes.

LFUCG certified the amounts it historically received from local franchise fees on or before December 1, 2005, as required by the statute. The Cabinet computed LFUCG's "hold-harmless" payment by determining their historical collections as a ratio of the total amount collected by all political subdivision and departments. This percentage was to be LFUCG's share of the fund and the basis for payments made by the Cabinet.

The General Assembly placed a cap on the total amount to be distributed to the

tice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised

Statutes (KRS) 21.580.

localities, in the amount of $3,034,000 per month. This amount was projected to be one-twelfth of the total potential annual collections, or $36,408,000. However, the amount of historical collections was actually determined to be $42,100,000 annually, leaving a shortfall of approximately 15% in the fund. Thus, each jurisdiction received an amount 15% lower than its actual historical collection. LFUCG's historical collections, as reported by the Cabinet, were $4,179,999.15 per year.

LFUCG filed a formal complaint, making two arguments. First, it argued that the fifteen percent shortfall had amounted to a $613,633.71 yearly loss in revenue, which had resulted in harm to the city. Second, LFUCG argued that the Cabinet should increase its historical collections in the amount of $430,342 per year, based upon a change made to their base revenue in 2005. Such a change is contemplated by the statute where there is a substantial change in base revenue from historical collection figures due to the enactment or modification of a local franchise fee prior to June 30, 2005. LFUCG increased the franchise fee imposed on cable television providers from three percent to five percent, which change became effective on February 1, 2005.

On January 29, 2007, an administrative hearing was held by the Cabinet, and the hearing officer recommended that the Cabinet deny any additional distribution to LFUCG. The Oversight Committee approved and adopted the hearing officer's report of June 20, 2007, issuing its final ruling on August 24, 2007. LFUCG appealed this ruling to the KBTA. The KBTA affirmed the Cabinet's ruling in denying LFUCG's request for an increase to cover the fifteen percent shortfall, but reversed the Cabinet's denial of LFUCG's request to increase its annual distributions by $430,342, attributable to the increase in its local franchise fee. The Cabinet now appeals the ruling of the KBTA. . . .

A cardinal rule of statutory construction is that if the statute is not ambiguous, and if applying the plain meaning of the words of the statute would not lead to an absurd result, then it is our duty to determine and effectuate the legislature's intent from the words used and further interpretation is not warranted. *Gilbert v. Commonwealth, Cabinet for Health and Family Services*, 291 S.W.3d 712, 715–16 (Ky.App.2008). Consequently, our first inquiry is whether the term "base revenue" is ambiguous. This Court in *Gilbert* noted that an ambiguity exists when an undefined term contained in a statute admits of two mutually exclusive yet reasonable interpretations. *Id.* at 716. This Court in *Gilbert* also quoted recent editions of BLACK'S LAW DICTIONARY defining "ambiguous" as being "reasonably capable of being understood in more than one sense." *Id.*

Applying these tests, we are persuaded that the term "base revenue" is not ambiguous when it is read in the context of the entire telecommunications tax legislation enacted in 2005. Clearly, the purpose of KRS 136.650 is to provide a method for compensating local governmental units for their loss of franchise fees which they would have been entitled to continue to receive had the 2005 legislation not been enacted. More specifically, the provisions of KRS 136.650(3) allow a political subdivision to seek an increase in the amount of its hold harmless distribution in the event that political subdivision's collection of franchise fees increased from June 30, 2005, to December 31, 2005, because of an

increase in the franchise fee effectuated before June 30, 2005. Absent subsection (3), the political subdivision's distribution would be based on the franchise fees which it collected from July 1, 2004, to June 30, 2005. Since subsection (3) serves to give the political subdivision an avenue to seek a larger distribution if it collected more franchise fees during the last six (6) months of 2005, the only reasonable interpretation of the term "base revenue" is revenue resulting from the franchise fee, and from no other source. Because this is the only reasonable interpretation of the term in question, we conclude that there is no ambiguity.

Interpreting the term "base revenue" in KRS 136.560(3) using what we find to be the plain meaning of the words chosen by the General Assembly, we conclude that the Board of Tax Appeals and the Franklin Circuit Court have not erred.

Consequently, we affirm the Franklin Circuit Court's opinion and order.

ALL CONCUR.