Stephanie FOSTER, Appellant

v.

**JENNIE STUART MEDICAL CENTER, INC; Debbie Bauer; Austin Moss; and Terry Peeples, Appellees**

and

Lisa Oliver, Appellant

v.

Jennie Stuart Medical Center, Inc; Debbie Bauer; Austin Moss; and Terry Peeples, Appellees.

Nos. 2011–CA–001136–MR, 2011–CA–001137–MR.

Court of Appeals of Kentucky.

Sept. 20, 2013.

Rehearing Denied Nov. 11, 2013.

630 

Kenneth W. Humphries, Hopkinsville, KY, for appellants.

C. Thomas Miller, Paducah, KY, for appellees.

Before CLAYTON, STUMBO and THOMPSON, Judges.

## OPINION

CLAYTON, Judge:

This appeal stems from summary judgment orders entered against Stephanie Foster and Lisa Oliver. Both filed suits against Jennie Stuart Medical Center (hereinafter "JSMC"), Debbie Bauer,[1]

---

1. Director of Clinical Services.

Austin Moss,[2] and Terry Peeples [3] (hereinafter collectively "the individual appellees") after their employment was terminated. Foster appeals from summary judgment orders, which dismissed her claims for defamation and the denial of termination appeal rights, as well as the dismissal of all claims against the individual appellees. Oliver appeals from summary judgment orders dismissing her claims for wrongful termination, defamation, and the denial of termination appeal rights, as well as the dismissal of all claims against the individual appellees. We find some of these issues were not ripe for summary judgment; therefore, we affirm in part, reverse in part, and remand for further proceedings.

Foster and Oliver were registered nurses at JSMC. On February 20, 2010, an anonymous e-mail was sent to the Kentucky Board of Nursing. The e-mail reported suspected nursing practices that were outside the scope of acceptable standards and created an unsafe environment at the hospital. It also noted that unsafe practices had been reported to senior staff at JSMC but nothing had been done to resolve the issues. Finally, the e-mail stated that there had been manager retaliation against members of the JSMC staff, which created a hostile work environment, and that this harassing behavior had been reported to the JSMC administration but nothing had been done to resolve the situation.

On February 22, 2010, the e-mail was forwarded to JSMC for it to investigate the matters. An investigation began on that day. The investigation was conducted by Debbie Bauer and Austin Moss. Multiple members of the JSMC staff were interviewed. According to Foster's and Oli-

ver's allegations, the investigation was not initiated to rectify the complaints listed in the e-mail but to find the sender or senders of the e-mail.

On February 26, 2010, Foster and Oliver were called into Moss's office, advised they were being terminated immediately, and were to be escorted from the hospital premises. When Foster asked why they were being terminated, she was told that "it was in the best interests of the institution" or words of similar import.

Foster and Oliver believed they had been fired because of the e-mail. They both filed civil complaints against the appellees for unlawful retaliation in violation of Kentucky Revised Statutes (KRS) 216B.165(3),[4] common-law wrongful termination, JSMC's refusal to comply with employee appeal rights, defamation, punitive damages, and special damages. The cases were eventually consolidated. It was not until after the lawsuits had been filed that it was disclosed that Foster had actually sent the e-mail.

Following limited discovery, JSMC filed motions for summary judgment. JSMC moved to have Bauer, Moss, and Peeples dismissed as defendants, moved to dismiss Foster's claims for denial of appeal rights and defamation, and to dismiss all of Oliver's claims. On March 31, 2011, the trial court entered orders granting all of JSMC's motions for summary judgment. The only claims left were Foster's claims for whistleblower retaliation and common-law wrongful termination. The trial court subsequently denied Foster's and Oliver's motions to alter or amend. These appeals followed.

▬ There are five issues before us in this consolidated appeal. Three of them

---

2. Director of Human Resources.

3. JSMC President and CEO.

4. This statute specifically pertains to whistleblowers from health-care facilities.

concern both Foster and Oliver. The other two are only relevant to Oliver. We will first discuss those unique to Oliver.

The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. Kentucky Rules of Civil Procedure (CR) 56.03.... "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476, 480 (1991). Summary "judgment is only proper where the movant shows that the adverse party could not prevail under any circumstances." *Steelvest*, 807 S.W.2d at 480, *citing Paintsville Hospital Co. v. Rose*, Ky., 683 S.W.2d 255 (1985). Consequently, summary judgment must be granted "[o]nly when it appears impossible for the nonmoving party to produce evidence at trial warranting a judgment in his favor[.]" *Huddleston v. Hughes*, Ky.App., 843 S.W.2d 901, 903 (1992).

*Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App.1996). "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo.*" *Lewis v. B & R Corporation*, 56 S.W.3d 432, 436 (Ky.App. 2001).

### KRS 216B.165

The first issue we will discuss is Oliver's claim against JSMC and the individual appellees[5] for violating KRS 216B.165(3). For our purposes, it is necessary to state the first three subsections of KRS 216B.165. The statute reads in pertinent part:

> (1) Any agent or employee of a health care facility or service licensed under this chapter who knows or has reasonable cause to believe that the quality of care of a patient, patient safety, or the health care facility's or service's safety is in jeopardy shall make an oral or written report of the problem to the health care facility or service, and may make it to any appropriate private, public, state, or federal agency.
>
> (2) Any individual in an administrative or supervisory capacity at the health care facility or service who receives a report under subsection (1) of this section shall investigate the problem, take appropriate action, and provide a response to the individual reporting the problem within seven (7) working days.
>
> (3) No health care facility or service licensed under this chapter shall by policy, contract, procedure, or other formal or informal means subject to reprisal, or directly or indirectly use, or threaten to use, any authority or influence, in any manner whatsoever, which tends to discourage, restrain, suppress, dissuade, deter, prevent, interfere with, coerce, or discriminate against any agent or employee who in good faith reports, discloses, divulges, or otherwise brings to the attention of the health care facility or service the circumstances or facts to form the basis of a report under subsections (1) or (2) of this section. No health care facility or service shall require any agent or employee to give notice prior to making a report, disclosure, or divulgence under subsections (1) or (2) of this section.

KRS 216B.165(1)–(3).

This statute does not set out a civil remedy that would allow Oliver and Foster

---

5. All issues pertaining to the individual appellees will be discussed later in this opinion. For now, we will focus only on claims against JSMC.

to sue JSMC. Their ability to bring suit comes pursuant to KRS 446.070, which states that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." It is undisputed that Foster and Oliver are properly suing for violation of KRS 216B.165(3) via KRS 446.070.

■ The trial court dismissed Oliver's claim for unlawful retaliation in violation of KRS 216B.165(3) because she was not the actual whistleblower. We agree with the trial court.

■ "All statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature[.]" KRS 446.080(1).

This Court has "a duty to accord to words of a statute their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion." Statutory interpretation is a matter of law and we are not required to give deference to the trial court's decision. Our main objective is to construe the statute in accordance with its plain language and in order to effectuate the legislative intent.

*Cabinet for Families and Children v. Cummings*, 163 S.W.3d 425, 430 (Ky.2005) (citations omitted). KRS 216B.165(3) only mentions those employees who report the circumstances stated in 216B.165(1). Subsection one (1) of the statute mandates that an employee make an oral or written report of any problem that affects the quality of care of a patient or patient's safety. Oliver did not make any such report.

■ "[W]e have a duty to accord to words of a statute their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion." *Bailey*

*v. Reeves*, 662 S.W.2d 832, 834 (Ky.1984)(citing *Department of Revenue v. Greyhound Corp.*, 321 S.W.2d 60 (Ky. 1959)). "A legislature making no exceptions to the positive terms of a statute is presumed to have intended to make none." *Bailey*, at 834 (quoting *Commonwealth v. Boarman*, 610 S.W.2d 922, 924 (Ky.App. 1980)). "It is to be presumed ... that the legislature is acquainted with the law, that it has knowledge of the state of the law on subjects on which it legislates, and that it is informed of previous legislation and the construction that previous legislation has received." *Boarman*, at 924. In this case, KRS 216B.165, does not allow protection for someone who is not the whistleblower. The language of the statute is not ambiguous and it does not require interpretation. "If the language is clear and unambiguous and if applying the plain meaning of the words would not lead to an absurd result, further interpretation is unwarranted." *Gilbert v. Commonwealth, Cabinet for Health and Family Services*, 291 S.W.3d 712, 716 (Ky.App.2008). Although we may believe that it would be reasonable to apply protection to individuals who were not the actual whistleblowers, the legislature has made a decision not to allow recovery pursuant to this statute. It is the legislature that must provide recovery to Oliver. Interestingly, KRS 61.102(2), the Kentucky Whistleblower Act, specifically states that:

(2) No employer shall subject to reprisal or discriminate against, or use any official authority or influence to cause reprisal or discrimination by others against, any person **who supports, aids, or substantiates any employee** who makes public any wrongdoing set forth in subsection (1) of this section.

(Emphasis added.) If the legislature had intended to allow this same protection un-

der the provisions of the Kentucky Patient Safety Act, it easily could have done so.

We affirm the trial court in dismissing this claim.

### Common-law Wrongful Termination

█ The other issue exclusive to Oliver is the dismissal of her claim for common-law wrongful termination. The elements of wrongful termination are:

1) The discharge must be contrary to a fundamental and well-defined public policy as evidenced by existing law.

2) That policy must be evidenced by a constitutional or statutory provision.

3) The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact.

*Grzyb v. Evans,* 700 S.W.2d 399, 401 (Ky. 1985).

█ JSMC argues that because Oliver cannot bring suit pursuant to the healthcare facility whistleblower statute, it cannot meet the elements of common-law wrongful termination. We hold that Oliver can maintain a claim for wrongful termination.

KRS 216B.010 states that one of the purposes of Chapter 216B is to "improve the quality and increase access to healthcare facilities, services, and providers, and to create a cost-efficient health-care delivery system for the citizens of the Commonwealth." Furthermore, KRS 216B.165(1) requires employees of a health care facility to report quality of care and safety problems. Finally, KRS 216B.165(3) states that health-care facilities shall not hinder the ability of employees to make these reports. These statutory provisions illustrate that if Oliver was discharged because it was believed she made the anonymous report, it would violate the stated public policy to ensure safe health-care facilities,

thereby meeting the elements of common-law wrongful termination. As a matter of law, the trial court erred in dismissing this claim. We therefore reverse and remand for further proceedings on this issue.

### Employee Appeal Rights

We now examine the issues that apply to both Foster and Oliver. The first is JSMC's refusal to comply with employee appeal rights. According to JSMC's employee manual, an employee may appeal his or her involuntary termination by following a certain procedure. When Foster and Oliver were fired, their access to their hospital e-mail accounts and the hospital's online computer network was also terminated; therefore, they could not access the online version of the employee manual. Also, Foster and Oliver both claim that they made numerous phone calls to and left messages for the human resources office in order to discover the procedure they needed to follow to appeal their termination. They allege that none of their calls were returned. JSMC argues that there is no basis for recovery on this issue. It also argues that Foster and Oliver had ten days following their termination to appeal, but failed to do so, thereby waiving this issue.

█ These are still issues of material fact that need to be determined and that summary judgment was inappropriate on this issue. If JSMC has a policy permitting the appeal of involuntary termination, but refuses to allow anyone to utilize it, it could be a basis for recovery. In addition, more facts need to be determined concerning Foster's and Oliver's alleged attempts to contact human resources about the appeal procedure and whether their calls were not returned. We therefore reverse and remand on this issue as it pertains to both Foster and Oliver.

**636**

## Defamation

The next issue is the dismissal of Foster's and Oliver's claims for defamation. When other JSMC employees asked members of the administration why Foster and Oliver were fired, they were told that it was "in the best interests of the institution that they no longer be associated with the hospital." Also, both appellants argue that JSMC defamed them by putting them on a no-rehire list. This was accomplished by checking a box on a "Personnel Action Request" form generated for their termination.

The elements of defamation are: (1) defamatory language; (2) about the plaintiff; (3) which is published to a third party; and (4) which causes injury to reputation. *Columbia Sussex Corp., Inc. v. Hay*, 627 S.W.2d 270, 273 (Ky.App.1981). We find that the "best interest" statement and the checking of the no-rehire box are not defamatory.

Statements are defamatory if they "(1) bring a person into public hatred, contempt or ridicule; (2) cause him to be shunned or avoided; or, (3) injure him in his business or occupation." *McCall v. Courier–Journal and Louisville Times Co.*, 623 S.W.2d 882, 884 (Ky.1981). Foster and Oliver claim that the "best interest" statement communicates that they failed in some professional, moral or legal way to meet the standards required of registered nurses. We disagree. The statement tells the listener nothing about their professional abilities or the reason for the termination. The statement is neutral at best, vague at worst. *See Cullen v.*

*South East Coal Co.*, 685 S.W.2d 187, 190 (Ky.App.1984). This also applies for checking the no-rehire box on the form. Furthermore, checking the box was part of a termination form/report used for the purposes of record keeping within JSMC. "Reports of this nature are protected by a qualified privilege because they are necessary communications within the employing company." *Wyant v. SCM Corp.*, 692 S.W.2d 814, 816 (Ky.App.1985) (citing *Caslin v. General Electric Co.*, 608 S.W.2d 69 (Ky.App.1980)).

## Personal Liability of the Individual Appellees

As previously stated, Foster and Oliver brought suit against JSMC and the individual appellees: Debbie Bauer, Austin Moss, and Terry Peeples. The individual appellees were dismissed from all the claims of Foster and Oliver and we find this was proper for all issues except for one claim. We cannot determine whether a specific claim was made against the individual appellees regarding the refusal to comply with employee appeal rights; therefore, the trial court will have to resolve that issue on remand.[6]

We hold that the same reasons the defamation claim was dismissed as discussed *supra* also apply to the individual appellees. We also hold that the individual appellees were properly dismissed as to the claim for violating KRS 216B.165(3) because that statute only applies to healthcare facilities and not individual employees. KRS 446.070, the statute used by Foster and Oliver in seeking a civil remedy

---

**6.** In Foster's and Oliver's Complaints, this claim specifically discusses JSMC, but later states that Foster and Oliver are entitled to recover damages they have suffered as a result of the "Defendants' refusal" to allow them to appeal their termination. This suggests Foster and Oliver are seeking damages

from all defendants; however, the individual appellees' motion for summary judgment and Foster's and Oliver's responses to the motion do not address the issue. Lastly, the trial court orders that pursuant to the individual appellees' motion for summary judgment, all claims against them were dismissed.

for the violation of the whistleblower statute, allows recovery from an "offender" which, here, is the health-care facility. This same reasoning applies to the common-law wrongful termination claim because it is based on KRS 216B.165(3). In other words, KRS 216B.165(3) is the statute the common-law wrongful termination claim is governed by and only applies to health-care facilities. These claims, as a matter of law, were properly dismissed.

Based on the foregoing, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

ALL CONCUR.