RENDERED:  OCTOBER 7, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1121-MR

MARCIA EBBS, M.D.                                                                                APPELLANT

v.

APPEAL FROM OLDHAM CIRCUIT COURT
HONORABLE KAREN A. CONRAD, JUDGE
ACTION NO. 20-CI-00206

CHRIS ROTY                                                                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Marcia Ebbs, M.D., appeals an August 18, 2020 order of the Oldham Circuit Court dismissing her claims of defamation and tortious interference with a prospective business advantage against Chris Roty.  Upon review, we affirm.

The circuit court dismissed Ebbs's complaint pursuant to Kentucky Rules of Civil Procedure (CR) 12.02(f). For purposes of a CR 12.02(f) motion, this Court, like the circuit court, must accept as true the plaintiff's factual allegations and draw all reasonable inferences in the plaintiff's favor. *Pike v. George*, 434 S.W.2d 626, 627 (Ky. 1968). With that in mind, the salient allegations of her complaint were as follows:

<u>The Parties</u>

1. The Plaintiff, Marcia Ebbs, M.D., is and has been at all times material to this lawsuit a resident of Oldham County, Kentucky and a duly licensed physician.

2. The Defendant [Chris Roty] is and has been at all times material to this lawsuit a high-level management employee of Baptist Health, a non-profit corporation with eight or nine hospitals, and related medical facilities, throughout Kentucky. He currently serves as President of Baptist Health, Paducah, where he also resides.

<u>Relationship of the Parties</u>

3. Plaintiff was employed by the parties' then mutual employer, Baptist Health, at Baptist Health LaGrange, from 1996 until 1999.

3. [sic] During 2013, Plaintiff applied for re-employment with Baptist Health LaGrange. Even though the hospital offered a position of employment to the Plaintiff, the defendant blocked its consummation, so that Dr. Ebbs accepted another employment offer at that time.

4. During August, 2018, Dr. Ebbs re-applied to work for Baptist Health LaGrange. On May 1, 2019, Dr. Michael Newkirk, Vice President of Physician Services for

-2-

Baptist Health Medical Group, informed Dr. Ebbs that the hospital refused to re-employ Dr. Ebbs because the Defendant had told him to never hire Dr. Ebbs, and that if she needed more information about this issue, she should discuss the issue with the hospital's medical staff.

5. On May 9, 2019, Dr. Newkirk repeated Defendant's statement about Dr. Ebbs, as set forth in Paragraph 4, above, to Peter Ebbs.

<u>Wrongs of Which the Plaintiff Complains</u>

6. Defendant's statement to the effect that Baptist Health would never hire Dr. Ebbs, and that if she needed more information about the issue she should talk to the hospital's medical staff, for which the Defendant is liable as the original utterer and publisher, was falsely and maliciously uttered and published, and constituted:

a. Slander per quod, and an injurious falsehood, because the statement caused special damages to Dr. Ebbs in the form of lost wages of her prospective employment with Baptist Health, LaGrange, and potentially other hospitals in the Baptist Health system.

b. Slander per se, because the statement imputed to Dr. Ebbs, both directly and by implying undisclosed defamatory facts, a want of skills and abilities necessary to perform the duties of her trade or calling as a physician; and held her up to public ridicule, shame, and obloquoy [sic]; and was likely to cause her to be shunned and avoided by her peers and by the public at large.

c. An intentional and unjustified interference with Dr. Ebbs' prospect of employment with Baptist Health LaGrange, and potentially other hospitals and medical organizations.

Without filing an answer, Roty moved to dismiss pursuant to CR 12.02, asserting Ebbs had failed to assert any viable claim against him. Relative to Ebbs's defamation claim, he argued it was barred on the ground of limitations; that the statement he allegedly made about Ebbs could not be considered defamatory; the statement was conditionally privileged; and that her claim was otherwise insufficiently pled. Regarding her claim of tortious interference with a prospective business advantage, he argued Ebbs had failed to identify a "valid business relationship or expectancy" with which he could have interfered and, due to what her complaint recited about his status as Baptist's agent, he argued he could not have interfered with, and was rather part of, any relationship Ebbs might have had with Baptist.

Upon consideration, and for the reasons discussed in more depth later in this Opinion, the circuit court granted Roty's motion. This appeal followed.

We review dismissals under CR 12.02(f) *de novo*. *Morgan & Pottinger, Attorneys, P.S.C. v. Botts*, 348 S.W.3d 599, 601 (Ky. 2011), *overruled on other grounds by Maggard v. Kinney*, 576 S.W.3d 559 (Ky. 2019). CR 12.02(f) is designed to test the sufficiency of a complaint. *Pike*, 434 S.W.2d at 627. It is proper to grant a CR 12.02(f) dismissal motion if:

> it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim . . . . [T]he question is purely a matter of law. Stated another way, the court must ask if

the facts alleged in the complaint can be proved, would
the plaintiff be entitled to relief?

*James v. Wilson*, 95 S.W.3d 875, 883-84 (Ky.App. 2002) (internal quotation marks and citation omitted).

On appeal, Ebbs asserts the circuit court erred in dismissing her defamation and tortious interference claims. We will discuss her defamation claim first. The elements of defamation are: (1) defamatory language; (2) about the plaintiff; (3) which is published to a third party; and (4) which causes injury to reputation. *Columbia Sussex Corp., Inc. v. Hay*, 627 S.W.2d 270, 273 (Ky.App. 1981). In an action for defamation, the courts are charged with the responsibility of determining whether a challenged statement is capable of conveying a defamatory meaning. *Yancey v. Hamilton*, 786 S.W.2d 854, 857 (Ky. 1989). Statements are defamatory if they "(1) bring a person into public hatred, contempt or ridicule; (2) cause him to be shunned or avoided; or, (3) injure him in his business or occupation." *McCall v. Courier-Journal and Louisville Times Co.*, 623 S.W.2d 882, 884 (Ky. 1981).

Recall, the offending language allegedly uttered by Roty, as set forth in Ebbs's complaint, was to the effect that Roty "told [Newkirk] to never hire Dr. Ebbs[.]" He may have also instructed Newkirk to tell Ebbs that "she should discuss the issue with the hospital's medical staff"; the complaint is unclear in that respect. Ebbs's complaint also indicates that Roty, by virtue of his position with

Baptist, had authority over hiring decisions: He was at all relevant times "a high-level management employee" of Baptist; had "blocked" her from employment in 2013; and Ebbs did not receive an employment offer from Baptist in 2018 or 2019 because, for reasons unknown, Roty told Baptist never to hire her.

That said, we are not prepared to hold that a cause of action for defamation arises merely upon the interpretation a third party could place upon an unexplained refusal to hire. Like the termination of at-will employment, a refusal to hire can occur for any reason, or no reason at all; thus, any message conveyed by a refusal to hire, standing alone, is inherently ambiguous. Moreover, we deemed equivalent language unactionable in *Foster v. Jennie Stuart Medical Center, Inc.*, 435 S.W.3d 629 (Ky.App. 2013). There, after two nurses were fired from a medical center, members of the administration informed other employees that it was "in the best interests of the institution that [the two fired nurses] no longer be associated with the hospital[,]" *Id.* at 636. The employer also placed both nurses on a "no-rehire list" by checking a box on a "Personnel Action Request" form generated for their termination. *Id.* Both nurses thereafter sued for defamation, arguing that "the 'best interest' statement communicate[d] that they failed in some professional, moral or legal way to meet the standards required of registered nurses." *Id.* We disagreed, explaining that both the "best interest" statement and the nurses' placement on the "no-rehire list" said "nothing about

-6-

their professional abilities or the reason for the termination.  The statement is neutral at best, vague at worst."  *Id*.

In the case at bar, Ebbs argues Roty's statements at issue communicated that she failed in some professional, moral, or legal way to meet the standards required of her profession.  But, Roty's statements were as neutral and vague as the statements at issue in *Foster*, and thus cannot be deemed defamatory.  Accordingly, the circuit court committed no error in dismissing Ebbs's defamation claim.[1]

Regarding Ebbs's remaining claim, we begin with the necessary elements.  Tortious interference with a prospective business advantage requires a showing of:  (1) the existence of a valid business relationship or expectancy; (2) that the defendant was aware of this relationship or expectancy; (3) that the defendant intentionally interfered; (4) that the motive behind the interference was improper; (5) causation; and (6) special damages.  *See Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 6 (Ky.App. 2012) (citation omitted).  Recall, Ebbs alleged in paragraph "6.c." of her complaint that Roty intentionally and unjustifiably interfered with her "prospect of employment with Baptist Health

---

[1] In its dispositive order, the circuit court dismissed Ebbs's defamation claim on limitations grounds.  As discussed, however, one of several other bases for dismissing Ebbs's claim urged by Roty in his CR 12.02 motion was that his language was *not* defamatory and did not impute unfitness to perform her job.  "[W]e, as an appellate court, may affirm the trial court for any reason sustainable by the record."  *Kentucky Farm Bureau Mut. Ins. Co. v. Gray*, 814 S.W.2d 928, 930 (Ky.App. 1991).

LaGrange, and potentially other hospitals and medical organizations." Upon review, the circuit court determined that, among other reasons, Ebbs's claim failed because the allegations of her complaint did not satisfy the first element set forth above.

Specifically, the circuit court determined Ebbs's allegation that Roty had affected her "prospect of employment with . . . potentially other hospitals and medical organizations" was too vague to qualify as a valid business expectancy. On appeal, Ebbs does not contest this aspect of the circuit court's judgment. That aside, the circuit court was correct. For purposes of this element, Ebbs was required to plead and prove "an anticipated business relationship with an identifiable class of third parties." *Ventas, Inc. v. Health Care Prop. Inv'rs, Inc.*, 635 F. Supp. 2d 612, 621 (W.D. Ky. 2009) (applying Kentucky law). Ebbs's cursory assertion of unnamed potential employers was too ambiguous and attenuated to support her claim.

As for the remainder of Ebbs's allegation, the circuit court explained that to the extent Roty could be deemed a third party capable of interfering[2] with

---

[2] Another reason the circuit court cited for dismissing Ebbs's claim of tortious interference with a prospective business advantage was that, in its view, Ebbs's complaint effectively failed to allege that a *third party* had caused some form of actionable interference between Ebbs and Baptist. In that vein, it noted Ebbs had indicated Roty was at all relevant times Baptist's agent; and that as its agent, Roty had authority over hiring decisions. Considering our disposition, it is unnecessary to address this point further. Suffice it to say that a third party is required for this tort to be actionable; and a corporate agent acting within the scope of his or her authority is generally considered indistinguishable from its principal for purposes of this tort. *See United*

Ebbs's "prospect of employment with Baptist Health LaGrange," the basic employment process of applying for a job, standing alone, did not create a valid business expectancy. We agree.

The operative inquiry is whether there was a reasonable likelihood or probability of a business relationship prior to the alleged interference. *See Ventas, Inc.*, 635 F. Supp. 2d at 622. "[M]ere wishful thinking that a business relationship will come about" is insufficient for purposes of this element. *PBI Bank, Inc. v. Signature Point Condominiums*, LLC, 535 S.W.3d 700, 716 (Ky. App. 2016) (quoting *Ventas, Inc.*, 635 F. Supp. 2d at 621). Thus, "[a] disappointed bidder with only a unilateral hope of winning does not have a valid expectancy." *Ventas, Inc.*, 635 F. Supp. 2d at 621 (citation omitted).

Here, without determining whether in all cases a job applicant must have had a firm offer in hand prior to the alleged interference to state a cause of action for tortious interference with a prospective business advantage, we believe that the well-pled facts alleged in the present case fall short of what is necessary to state a claim under this theory. The allegations of Ebbs's complaint demonstrate nothing more than that Ebbs submitted an employment application with Baptist in

*States ex rel. Doe v. Jan-Care Ambulance Service*, 187 F. Supp. 3d 786, 794 (E.D. Ky. 2016) (explaining "under Kentucky law, one cannot tortiously interfere with *one's own* prospective business relationship" (emphasis in original)); *see also Harstad v. Whiteman*, 338 S.W.3d 804, 814 (Ky.App. 2011) (explaining "[a]gents of a party to a contract who act within the scope of their employment cannot interfere with that party's contract").

2018, at a time when she and Baptist had no existing business relationship; and that she discovered several months later that her application had been rejected. Her "unilateral hope" of receiving a job offer that ultimately never materialized was not a sufficient expectancy. *Ventas, Inc.*, 635 F. Supp. 2d at 621. Indeed, to hold that her complaint stated a cause of action for tortious interference with a prospective business advantage would considerably broaden the scope of the tort. Under Ebbs's reasoning, the potential class of litigants could include all persons who do no more than submit a job application, and anyone supplying a negative reference to a prospective employer might conceivably find themselves subject to an action for intentional interference with prospective economic advantage. We do not believe that such an expansion of this cause of action is warranted.

In sum, the Oldham Circuit Court did not err in dismissing Ebbs's complaint. We therefore affirm.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Philip C. Kimball
Louisville, Kentucky

BRIEF FOR APPELLEE:

Donna King Perry
Jeremy S. Rogers
Alina Klimkina
Chase M. Cunningham
Louisville, Kentucky