RENDERED: MARCH 7, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0098-MR

HIGHLANDS ARH REGIONAL
MEDICAL CENTER                                                      APPELLANT

v.
APPEAL FROM FLOYD CIRCUIT COURT
HONORABLE THOMAS M. SMITH, JUDGE
ACTION NO. 20-CI-00555

ASHLEY SHEPHERD                                                      APPELLEE

AND

NO. 2023-CA-0118-MR

ASHLEY SHEPHERD                                               CROSS-APPELLANT

v.
CROSS-APPEAL FROM FLOYD CIRCUIT COURT
HONORABLE THOMAS M. SMITH, JUDGE
ACTION NO. 20-CI-00555

HIGHLANDS ARH REGIONAL
MEDICAL CENTER; HIGHLANDS
HOSPITAL CORPORATION; AND
HIGHLANDS REGIONAL MEDICAL
CENTER                                                      CROSS-APPELLEES

OPINION
AFFIRMING IN NO. 2023-CA-0118-MR, AND
REVERSING AND REMANDING IN NO. 2023-CA-0098-MR

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; A. JONES AND LAMBERT, JUDGES.

LAMBERT, JUDGE: These appeals stem from the Floyd Circuit Court's September 12, 2022, judgment, following a jury trial, on Ashley Shepherd's claims for wrongful termination and retaliation against her former employer, Highlands ARH Regional Medical Center (hereinafter "Highlands"). Highlands appeals from the portion of the judgment finding that Shepherd had been wrongfully terminated[1] and awarding her damages, and Shepherd cross-appeals from the portion dismissing her claim that Highlands retaliated against her in violation of Kentucky Revised Statutes (KRS) 216B.165. Having considered the briefs, record, and law, we reverse the judgment in Shepherd's favor and remand for dismissal, and we affirm the dismissal of her retaliation claim.

---

[1] The parties agree that this was the claim decided by the jury even though the judgment states that both the retaliation and wrongful termination claims were dismissed on Highlands' motion for a directed verdict. For purposes of this appeal, we assume that the parties are correct.

**BACKGROUND FACTS AND PROCEDURAL HISTORY**

Shepherd, a social worker, worked as a therapist in the behavioral health unit at what is now Highlands[2] from October 2016 until October 2019 as a contractor and from November 2019 until April 2020 as an employee of Highlands. Shepherd's immediate supervisor was Bruce Fletcher, Head Nurse Manager, and his supervisor was Susan Ellis, Community Chief Nursing Officer. On the behavioral health unit, Shepherd worked with patients with mental health needs. Her job duties included performing safety assessments to determine if the patients were a danger to themselves or others and, in conjunction with a multi-disciplinary treatment team, to make discharge recommendations that were heavily relied on by the psychiatrist, who made the final determinations.

During the term of her work at Highlands, both as a contractor and an employee, Fletcher repeatedly told Shepherd that Ellis had instructed that patients who were unable to pay for treatment, generally because they had exceeded their insurance coverage, needed to be discharged. This typically happened after Fletcher had attended his morning meeting with management. Depending on the patient, Shepherd often responded to Fletcher that she was not comfortable with his instructions because the patients were not safe for release, and, in those

---

[2] Highlands acquired the hospital in August 2019, and it began operating the behavioral health unit in November 2019.

circumstances, she informed the treatment team that she did not recommend discharge.

At some point, Fletcher advised Shepherd that her charts were being audited, that there was "an invisible target" on her back, and that, while he liked having her there, she might want to consider alternative employment because things were "out of his hands." On January 23, 2020, Shepherd learned from two other Highlands social workers, Rachel Farrell and Brittany Blankenship, that Ellis had spoken with them multiple times trying to elicit negative information about her work performance and her personal life and that Ellis had promised them promotions in exchange for their assistance.

On February 4, 2020, Shepherd filed a complaint with the Highlands human resources department about Ellis's attempts to solicit information about her. As a result, Shepherd met with various representatives of Highlands and of Appalachian Regional Healthcare, including the Community CEO, the Director of Risk and Compliance, and the Chief Legal Officer. Shepherd was assured that her job was safe, that the behavior would stop immediately, and that Ellis would not be permitted in the behavioral health unit pending the investigation. Shepherd was encouraged to bring any additional concerns to Highlands' attention. Shepherd did not inform any of the individuals that she met with that she was being instructed to

prematurely discharge patients for financial reasons, and she stated that she had no idea why Ellis was targeting her.

Despite assurances that Ellis would not be on Shepherd's floor, Ellis not only continued to conduct rounds, but she increased the frequency to up to twice a day. However, Shepherd had no direct interaction with her, Shepherd made no further complaints to Highlands, and Ellis was ultimately removed as Bruce's supervisor, taking her out of Shepherd's chain-of-command.

Also in February, at Fletcher's urging, Shepherd applied for Director of Behavioral Science and Psychology, a newly created position within Highlands. Shepherd alleges that she was the only individual at Highlands who met the job requirements; however, she asserts that the requirements were later modified, and another person was offered the position. Shepherd attributes this to nepotism, as the selected individual was the daughter of an employee in Highlands' human resources department, her refusal to prematurely discharge patients without the means to pay for treatment, and her complaints to that effect to Fletcher.

Shepherd sought and secured alternative employment, and on March 27, 2020, she resigned, citing constructive discharge tactics by Highlands' administrative officials. Highlands accepted her resignation, and, after working her two-week notice period, her final day of employment was April 10, 2020.

On September 23, 2020, Shepherd filed the underlying suit alleging that she was pressured by Highlands administration, through her supervisor, to recommend discharge for financial motives on patients who were not safe for release, that she refused to comply, and that she reported this to her supervisor. The complaint, asserts that Highlands retaliated against her by placing her in a hostile work environment and taking hostile actions for the purpose of forcing her to resign, constituting constructive discharge, and that their actions violated KRS 216B.165. Shepherd sought compensatory damages for emotional pain and distress as well as punitive damages. Highlands answered the complaint, denying all claims of wrongdoing and asserting that Shepherd was not entitled to relief.

In January 2022, Highlands filed a motion for summary judgment, seeking dismissal of all claims. In the motion, Highlands argued that, accepting Shepherd's deposition testimony as true, she had not made a *prima facie* claim of retaliation in violation of KRS 216B.165 and that her common law claim based on the same statute should be preempted or dismissed for the same reasons. Shepherd opposed the motion. On April 4, 2022, the court concluded that there were genuine issues of material fact and denied Highlands' motion.

The case was tried before a jury on August 30 and 31, 2022. Shepherd testified on her own behalf as set forth above. She confirmed that she had not been fired, reprimanded, or suspended, and that Highlands had not changed

-6-

her pay or duties. Shepherd stated that she had not raised the issue of premature discharge of patients with anyone other than Fletcher and that, other than her February 2020 complaint about Ellis soliciting information about her, she had not reported any concerns regarding her treatment at Highlands.

Farrell and a nurse who worked with Shepherd testified in support of her harassment claims, and the nurse confirmed that she heard Fletcher tell Shepherd that patients who could not pay needed to be discharged. Fletcher testified that he had no memory of instructing Shepherd to recommend the premature discharge of patients, of Shepherd complaining that she had been pressured to make false recommendations, of increased chart audits after Highlands took over the unit, or of Shepherd being the target of audits.

After Shepherd closed her case-in-chief, Highlands moved for a directed verdict on all claims. The court granted the motion as to the KRS 216B.165 retaliation claim, finding that there was no evidence that Highlands had retaliated against Shepherd, but it determined that Shepherd could still succeed on her wrongful termination claim.

Highlands presented testimony from various witnesses disputing Shepherd's claims of harassment. Testimony from Ellis and a nurse in Highlands' utilization review, who was tasked with providing insurance companies with the necessary information to secure a patient's coverage, established that audits

increased unit-wide after October 2020, when documentation issues caused denials in coverage in many cases. Ellis denied that Shepherd was targeted by the audits. She also denied soliciting information from social workers Farrell and Blankenship about Shepherd's work performance or personal life or offering them incentives to provide such information. Blankenship confirmed Ellis's recounting, denying that anyone solicitated information from her about Shepherd's personal life or directly about her job performance, and she denied that she was offered a promotion in exchange for such information.

Both the Community CEO and the Director of Risk and Compliance testified that Shepherd's complaint about Ellis's conduct was investigated, that she had not raised any additional concerns regarding alleged harassment or patient safety, and that the qualifications for the Director of Behavioral Science and Psychology position had not been modified during the hiring process.[3] The Community CEO had no memory of telling Shepherd that Ellis was banned from her floor, noting that a ban would have prevented Ellis from doing her job and conducting rounds to check on her nurses. He denied that Highlands attempted to prematurely discharge patients or had a policy to discharge patients who could not pay. The Director of Risk and Compliance testified about Highlands' harassment

---

[3] A log of the job posting was accepted as Highlands' Exhibit 14, but it is not contained in the record on appeal.

policy and code of conduct as well as the various means provided for reporting safety concerns, including anonymously. She confirmed that no complaints about patient discharge had been made.

The jury found in Shepherd's favor on the claim of wrongful termination and awarded her $400,000.00 in pain and suffering and $2 million in punitive damages. On September 12, 2022, the court entered a judgment in accordance with the jury's verdict, although it also stated that both the statutory retaliation and the wrongful termination claims had been dismissed on Highlands' motion for a directed verdict, and awarded Shepherd reasonable attorney fees.

Highlands filed motions for a judgment notwithstanding the verdict and/or to alter, amend, or vacate the judgment and for a new trial, arguing relevantly that Shepherd's proof was wholly insufficient. Shepherd also filed a motion to alter or amend pursuant to Kentucky Rules of Civil Procedure (CR) 59.05, asserting that the judgment erroneously stated that her wrongful termination claim had been dismissed.

The court denied Highlands' motions via a January 4, 2023, order, but it did not address Shepherd's motion. Thereafter, Highlands filed its notice of appeal from the judgment and post-trial order, and Shepherd filed a notice of cross-appeal. Shepherd subsequently filed motions seeking a ruling on her CR 59.05 motion to correct the judgment. Highlands agreed that the judgment should be

amended to reflect that only the statutory retaliation claim had been dismissed. The court denied the motions via an order entered August 2, 2023, and Shepherd amended her cross-appeal to include the latest order. This appeal followed.

**ANALYSIS**

On appeal, Highlands raises several issues arising from all stages of the proceedings, including that the court erred by denying a directed verdict on all claims.[4] Shepherd defends the judgment, but argues that, if the matter is remanded for a new trial, her claim that Highlands retaliated against her in violation of KRS 216B.165, which had been dismissed on directed verdict, should be reinstated.[5]

On appeal from an order granting or denying a motion for directed verdict, this Court "is under a duty to consider the evidence in the strongest possible light in favor of the party opposing the motion. Furthermore, it is required to give the opposing party the advantage of every fair and reasonable inference which can be drawn from the evidence." *Turner v. Norton Healthcare, Inc.*, 681

---

[4] Specifically, Highlands appeals: (1) the court's failure to grant its three separate motions for summary judgment (one that was denied, and two that were not ruled on); (2) the failure to grant its motions *in limine* to exclude Farrell, Fletcher, and the nurse from testifying (the court only addressed the first two and held the motion in abeyance); (3) the denial of its renewed motion to exclude Farrell from testifying; (4) the denial of its motion for a directed verdict on the wrongful termination claim; (5) the jury instructions on wrongful termination, punitive damages, and emotional distress damages; (5) the denial of an affirmative defense instruction; (6) the award of attorney fees; and (7) the denial of its motion for a judgment notwithstanding the verdict and/or for a new trial.

[5] Shepherd also argues that the judgment should be amended to remove the statement that her wrongful termination claim was dismissed and to award her costs.

S.W.3d 26, 33 (Ky. 2023) (quoting *Taylor v. Kennedy*, 700 S.W.2d 415, 416 (Ky. App. 1985)). A directed verdict should only be "granted if there is a complete absence of proof on a material issue in the action, or if no disputed issue of fact exists upon which reasonable men could differ." *Id.*

We begin by addressing Shepherd's claim under KRS 216B.165.[6] The statute provides:

> (1) Any agent or employee of a health care facility or service licensed under this chapter who knows or has reasonable cause to believe that the quality of care of a patient, patient safety, or the health care facility's or service's safety is in jeopardy shall make an oral or written report of the problem to the health care facility or service, and may make it to any appropriate private, public, state, or federal agency.
>
> . . .
>
> (3) No health care facility or service licensed under this chapter shall by policy, contract, procedure, or other formal or informal means subject to reprisal, or directly or indirectly use, or threaten to use, any authority or influence, in any manner whatsoever, which tends to discourage, restrain, suppress, dissuade, deter, prevent, interfere with, coerce, or discriminate against any agent or employee who in good faith reports, discloses, divulges, or otherwise brings to the attention of the health care facility or service the circumstances or facts to form the basis of a report[.]

---

[6] Shepherd's claim is authorized by KRS 446.070, which states that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation."

Based upon the statutory language, to state a valid claim, Shepherd had to prove that she made or attempted to make a good faith written or oral report disclosing, divulging, or otherwise bringing to Highlands' attention that a patient's quality of care or safety was in jeopardy. Highlands asserts that, as a matter of law, Shepherd did not make a qualifying report.

There is relatively little published case law interpreting or applying KRS 216B.165. However, because it is analogous in both its general purpose and in its substantially similar language to the Kentucky Whistleblower Act (KWA), barring retaliation by the Commonwealth towards its employees who disclose qualified wrongdoing, we are guided by the Supreme Court of Kentucky's interpretation and application of the KWA. *Compare* KRS 61.102(1)[7] with KRS 216B.165(1), (3).

---

[7] KRS 61.102(1) states:

> No employer shall subject to reprisal, or directly or indirectly use, or threaten to use, any official authority or influence, in any manner whatsoever, which tends to discourage, restrain, depress, dissuade, deter, prevent, interfere with, coerce, or discriminate against any employee who in good faith reports, discloses, divulges, or otherwise brings to the attention of [the designated officials] any facts or information relative to an actual or suspected violation of any law, statute, executive order, administrative regulation, mandate, rule, or ordinance of the United States, the Commonwealth of Kentucky, or any of its political subdivisions, or any facts or information relative to actual or suspected mismanagement, waste, fraud, abuse of authority, or a substantial and specific danger to public health or safety. No employer shall require any employee to give notice prior to making such a report, disclosure, or divulgence.

It is a well-settled concept that to be a whistleblower under the KWA, one must expose concealed wrongdoing. *See Pennyrile Allied Cmty. Servs., Inc. v. Rogers*, 459 S.W.3d 339, 345 (Ky. 2015); *Admin. Office of Courts v. Miller*, 468 S.W.3d 323 (Ky. 2015); and *Workforce Dev. Cabinet v. Gaines*, 276 S.W.3d 789, 792 (Ky. 2008). As the Court explained in *Rogers*, *supra*, the KWA's use of the words "'reports, discloses, divulges, or otherwise brings to the attention of . . . ' [(the same language as in KRS 216B.165(3))] describes behavior that brings to light facts not otherwise known to the recipient." Applying these principles, we turn to the proof presented at trial.

Shepherd asserts on appeal that she made repeated oral "reports" to Fletcher, who, as her supervisor, had an obligation to investigate pursuant to KRS 216B.165(2), and to unidentified others, challenging Highlands' discharge policy, which she asserts is plainly a patient safety concern. However, Shepherd's testimony was only that, often after a morning meeting for management, her supervisor would announce that particular patients who were no longer covered by insurance needed to be discharged. If Shepherd believed it was premature, she would respond that she was not comfortable with that direction or that the patient was not ready to be released, and she made sure that all of the treatment team members knew of her recommendation.

Although Shepherd's response evinces a refusal to follow instructions detrimental to patient safety, we agree with Highlands that recommending that patients be retained is not the same as disclosing the care or safety issue of a policy or instructions to prematurely discharge those with the inability to pay, and thus it is not a report under KRS 216B.165. Moreover, the only named recipient of Shepherd's alleged report was the very same supervisor who instructed her to engage in the challenged conduct; *ergo*, Shepherd did not expose a concealed or unknown issue. "[C]omplaints by an employee directly to her supervisor concerning the supervisor's own wrongful conduct generally cannot qualify as a whistleblower disclosure." *Harper v. Univ. of Louisville*, 559 S.W.3d 796, 802 (Ky. 2018).

Shepherd's actions did not further the purpose of KRS 216B.165 and therefore do not qualify as a report. Accordingly, albeit on different grounds, we affirm the dismissal of Shepherd's statutory retaliation claim on Highlands' motion for directed verdict.

We turn now to Shepherd's common law wrongful termination claim. As a narrow exception to the terminable-at-will doctrine, an employer may be liable for wrongful termination if it discharges an employee in contravention of a fundamental and well-defined public policy established by a constitutional or statutory provision. *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985). Discharge

-14-

can be constructive if, "based upon objective criteria, the conditions created by the employer's action are so intolerable that a reasonable person would feel compelled to resign." *Northeast Health Mgmt., Inc. v. Cotton*, 56 S.W.3d 440, 445 (Ky. App. 2001).

Shepherd again relies on KRS 216B.165 for the required statutory public policy justifying her wrongful termination claim. She argues that, even if her complaints to her supervisor were insufficient to support her claim for retaliation in violation of the statute directly, consistent with this Court's holding in *Foster v. Jennie Stuart Med. Ctr., Inc.*, 435 S.W.3d 629 (Ky. App. 2013), she could still maintain a common law termination claim if, as the jury found, the hospital constructively discharged her based on its belief that she had made a qualifying report. We disagree that *Foster* is applicable.

*Foster* is a consolidated appeal from an order summarily dismissing two nurses' claims of wrongful termination in violation of KRS 216B.165 against their former employer, a hospital. The nurses alleged that they had been fired because the hospital believed that they were the authors of an email disclosing patient safety issues sent anonymously to the Kentucky Board of Nursing. It was disclosed during litigation that one of the two nurses was the author of the email. Because the second nurse was not the true whistleblower, this Court affirmed the dismissal of her KRS 216B.165 retaliation claim. However, the Court held that the

second nurse's allegation that she was discharged based on the hospital's, albeit incorrect, belief that she was the whistleblower violated the purpose of KRS 216B.165 to improve healthcare by requiring disclosure of issues and protecting reporters from reprisals, and thus supported a common law termination claim.

In the case at bar, Shepherd did not make a qualifying report and, unlike in *Foster*, she has not alleged that she was incorrectly identified as the source of a qualifying report. A wrongful termination claim based solely on Shepherd's responses to Fletcher that in no way exposed the patient safety issue for investigation and correction is beyond the scope of KRS 216B.165. Further, Shepherd's attempts to conflate her refusal to prematurely discharge patients with the applicable public policy are unavailing, because KRS 216B.165 deals strictly with disclosures of patient safety issues and not with a patient care decision in and of itself. Accordingly, Shepherd cannot establish that her constructive discharge was in contravention of the public policy set out in KRS 216B.165.[8] For these reasons, the judgment of the circuit court on Shepherd's common law wrongful termination claim must be reversed.

---

[8] For clarity, we emphasize that Shepherd has not alleged that she was constructively discharged to prevent or discourage her from making a qualifying report.

Because we conclude Shepherd's claims must be dismissed as a matter of law, we need not address the remaining issues raised in the parties' appeals.

## CONCLUSION

For the forgoing reasons, in appeal No. 2023-CA-0098-MR, the judgment for Shepherd on wrongful termination is reversed, and the matter is remanded for the entry of a dismissal order. In appeal No. 2023-CA-0118-MR, the judgment dismissing Shepherd's claim of retaliation in violation of KRS 216B.165 is affirmed.

THOMPSON, CHIEF JUDGE, CONCURS.

JONES, A., JUDGE, DISSENTS AND DOES NOT FILE SEPARATE OPINION.

BRIEFS FOR APPELLANT/
CROSS-APPELLEES:

Laura L. Mays
Lexington, Kentucky

BRIEFS FOR APPELLEE/
CROSS-APPELLANT:

Jerry A. Patton
Prestonsburg, Kentucky

Kevin C. Burke
Jamie K. Neal
Louisville, Kentucky